*484 OPINION OF THE COURT
Adrienne Hofmann Scancarelli, J.
By petition filed on June 12, 1992, petitioner seeks to adopt Charnille, born on May 19, 1987. Charnille was the subject of an abandonment proceeding brought pursuant to Social Services Law § 384-b in New York County by which guardianship and custody was transferred to the Leake and Watts Children’s Home, Inc., an authorized agency, jointly with the Commissioner of Social Services, City of New York, by order dated October 1, 1990.
Petitioner is a resident of New Jersey. Shortly after the petition was filed, and on several occasions thereafter, counsel for the petitioner was advised that due to petitioner’s out-of-State residency, a criminal justice history and a report from the State-wide central register of child abuse and maltreatment from the appropriate New Jersey agencies would be required before the adoption could proceed.[1] On each occasion, the attorney for petitioner gave assurances that the court would be receiving such reports. After some months had passed and said reports remained absent from the court file, it was suggested to the attorney that the petition be withdrawn from this court and that a proceeding for adoption be instituted in the State of New Jersey where the adoptive parent and child reside. The attorney advised the court that he intended to proceed with the adoption in Westchester County with the court receiving all required reports. The court accepted these assurances, relying on this attorney’s frequent appearances in Westchester County Family Court and his concomitant knowledge of and compliance with the court’s requirements and procedures.[2]
By letter dated February 19, 1993, the petitioner’s attorney was advised by the court that if the required documents were not received within 30 days, the subject petition may be deemed withdrawn. In response, by letter dated February 24, 1993 and received on March 8, 1993, the attorney requested *485 that the court waive its requirement for New Jersey child abuse clearance.
Domestic Relations Law § 114 provides that a Judge shall make an order of adoption "[i]f satisfied that the best interests of the adoptive child will be promoted thereby.” In order to make that determination, the court must have before it all relevant information and documentation, not merely that which a given agency deems necessary. The court does not sit as the validator of the agency’s predeterminations.
Pursuant to Laws of 1989 (ch 707), the New York State Legislature amended Domestic Relations Law § 112 (7) to require that a Judge make inquiry of the child abuse and maltreatment registry prior to the entry of an order of adoption. Prior to this statutory amendment, it had been a long established policy of courts throughout the State and certainly of this court to require both criminal and abuse reports. There should be no acquiescence in any attempt to restrict access to such vital data where a court is charged with a monumental decision with lifelong consequences for the child (see, e.g., Eileen v Stephen, 143 Misc 2d 582, 143 Misc 2d 492 [Sup Ct, Nassau County 1989]). In apparent recognition of the importance of access to criminal history files for purpose of, inter alla, investigations in adoption proceedings, the New York State Unified Court System and the New York State Division of Criminal Justice Services entered a Use and Dissemination Agreement in April 1989 outlining the procedures to be used to procure same. Uniform Rules for Trial Courts (22 NYCRR) § 205.58 (c) requires that reports from both the State-wide central register of child abuse and maltreatment and from the New York State Division of Criminal Justice Services be obtained in proceedings for certification as a qualified adoptive parent pursuant to Domestic Relations Law § 115-d.
It is beyond cavil that these court rules, statutes and policies exist to aid the court in its mandate to act in the best interests of the child, i.e., to make an informed and independent judgment. The concerns of the judiciary, the Legislature and the public at large regarding "bad” adoptions are well documented and need no recitation herein. These concerns are in no manner diminished by the happenstance of a petitioner’s out-of-State residence and claimed inability to obtain documentation which would be required of a New York resi *486 dent adopting the same child.[3] It is obvious that the result sought by petitioner and the documentation required to achieve same are readily available by means of a proceeding initiated in her home State of New Jersey.
This court would urge the New York State Legislature to reconsider the wisdom of opening New York courts to out-of-State adoptive parents without ensuring that a mechanism for reciprocal sharing of child abuse and criminal history information exists. While granting out-of-State petitioners access to New York courts to adopt New York children may be superficially perceived as safeguarding New York’s adoptive children, the reality is quite the opposite absent availability of such information. Moreover, Federal governmental consideration of this subject with the goal of expediting and mandating interstate cooperation is imperative; the phenomenon of children being transported between States for purposes of adoption is widespread and the State courts which must in each case ratify such arrangements must be as informed as modern technology provides.[4]
For these reasons, petitioner’s request is denied and the petition is dismissed.

. For reasons not clear to this court, New York criminal justice and child abuse and maltreatment reports were submitted for this New Jersey resident petitioner. The agency’s own "Investigation” indicates that this New Jersey resident has been cleared by the State Central Register in Albany!

. According to affirmations contained in the court file of this matter, the attorney also represents the adoption agency, which has its principal office in Westchester County. Further, he states he has been retained in approximately 140 adoption proceedings within the past two years.

. The statutory authorization granted to out-of-State adoptive parents to initiate proceedings where the agency is located (Domestic Relations Law § 113) or, in the case of a private-placement adoption, where the child is located (Domestic Relations Law § 115 [1] [c]; [2]) does not, in this court’s view, concurrently grant the out-of-State adoptive parents an exemption from the investigative scrutiny imposed upon similarly situated New York adoptive parents.

. Interstate sharing of child abuse and criminal data is essential even for intrastate adoptions as often the adoptive parents have previously resided in a State or States other than their current one.